UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

TOBY J. MASSE,

Plaintiff,

vs.

MAGGIE MILLER-STOUT, YSIDRO BECERRA, JAMES WATKINS, LARRY JENKINS, and GREGORY STARR,

Defendants.

NO. CV-10-065-EFS

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Before the Court, without oral argument, is Defendants Maggie Miller-Stout, Ysidro Becerra, James Watkins, Larry Jenkins, and Gregory Starr's (collectively "Defendants") Motion for Summary Judgment. ECF No. 20. After reviewing the submissions of the parties and all relevant authority, the Court is fully informed and grants Defendants' unopposed motion.

## I. FACTUAL BACKGROUND[1]

[1] Because Mr. Masse has failed to respond to Defendants' motion even after the Court issued *Klingele* warnings and extended his time to respond, ECF Nos. 29, 33 & 40, the Court treats all facts alleged in Defendants' moving papers as undisputed. *See* Fed. R. Civ. P. 56(e)(2). The Court sets forth all undisputed facts referenced in this background

This is a pro se inmate lawsuit alleging numerous constitutional violations against officials at Airway Heights Correctional Center (AHCC) in Airway Heights, Washington. Plaintiff Toby Masse was at all relevant times an indigent inmate subject to the Washington Department of Corrections' (DOC) indigent postage policy. Defendant Maggie Miller-Stout is the superintendent of AHCC, and Defendants Ysidro Becerra, James Watkins, Larry Jenkins, and Gregory Starr are officials at AHCC.

Under the DOC indigent postage policy, inmates are permitted up to ten mail items, including legal mail, per week. Inmate mail is processed by DOC officials and submitted to the prison mailroom. The mailroom then determines whether an inmate has exceeded the allowed postage amount, and routes any mail submitted in excess of the policy's limits back to the inmate through the mail distribution system. On numerous occasions in 2007 and 2008, Mr. Masse attempted to send mail in excess of the amount allowed by the indigent mail policy, and consistent with DOC policy, his mail was routed back to him.

On one occasion, Mr. Masse refused to pick up and take mail that was returned because it exceeded the postage allowance. On that occasion, the mail was returned to his cell and placed on his bunk. Mr. Masse claims that four typewriter ribbons were missing from his cell after his mail was returned. ECF No. 4 ¶ 18. However, Defendants have no knowledge of any missing typewriter ribbons, and no named Defendant ever removed anything from Mr. Masse's cell. On another occasion, Mr. Masse

---

section without an Electronic Case Filing System (ECF) number; disputed allegations are included with reference to an ECF number.

alleges that Defendant Becerra threw a stack of legal mail at his groin area. ECF No. 4 ¶ 17.

Mr. Masse alleges that he was threatened by DOC staff not to file grievances, and was retaliated against for submitting grievances. ECF No. 4 ¶¶ 6-10, 12. However, Mr. Masse was not threatened or discouraged from filing any grievance, and he in fact did file numerous grievances during his incarceration at AHCC. These grievances were processed and handled pursuant to DOC policy.

Mr. Masse also alleges that he was transferred from AHCC, which had a law library, to Olympic Corrections Center (OCC), which did not have a law library, in retaliation for filing administrative grievances against Defendants. ECF No. 4 ¶ 20. Mr. Masse’s transfer, however, was made pursuant to his February 15, 2008 verbal request that he be promoted to minimum security status and transferred to a minimum security facility on the western side of Washington. On April 3, 2008, Mr. Masse was sent to the transfer center to await transfer to OCC. On April 7, 2008, Mr. Masse was transferred to OCC. On the day of Mr. Masse’s arrival at OCC, he was involved in an altercation with another inmate, creating a security risk, and on April 8, 2008, Mr. Masse was transferred out of OCC to Stafford Creek Correctional Center. Minimum security facilities like OCC do not have law libraries; minimum security inmates seeking access to a law library can file a request for access, and the DOC will make a temporary transfer of the inmate to allow such access. During his one day stay at OCC, Mr. Masse did not request access to a law library.

## II. PROCEDURAL HISTORY

Appearing pro se, Mr. Masse filed the complaint in this matter on March 12, 2010, asserting several claims under 28 U.S.C. § 1983: violation of his First Amendment rights to freedom of speech and to petition the government for redress of grievances; retaliation for the exercise of his First Amendment rights; and violation of his Fourteenth Amendment right to due process of law. ECF No. 4. Mr. Masse's Application to Proceed In Forma Pauperis was granted, and after screening his complaint, the Court directed service on June 1, 2010. ECF Nos. 3 & 5.

Defendants moved for summary judgment on May 26, 2011, with hearing set for July 15, 2011. ECF Nos. 20 & 28. On the same day that Defendants filed their motion, the Court mailed Mr. Masse a Notice to Pro Se Litigants of the Dismissal and/or Summary Judgment Rule Requirements. ECF No. 29. Under Local Rule (LR) 7.1(c)(1), Mr. Masse had thirty days from the date of mailing of the Certificate of Service to respond to Defendants' summary judgment motion. Mr. Masse did not respond. On August 8, 2011, the Court provided Mr. Masse with a *Klingele* advisory,[2] extended Mr. Masse's response deadline to September 7, 2011, and reset the hearing date to October 12, 2011. ECF No. 33. On August 26, 2011, the Court granted in part Defendants' Motion to Vacate Scheduling Order, ECF No. 34, and again warned Mr. Masse that a failure to respond to Defendants' motion would risk dismissal of his case. ECF No. 40; *see also* LR 7.1(e). Mr. Masse has not responded to Defendants' motion.

---

[2] *See Klingele v. Eikenberry*, 849 F.2d 409, 411 (9th Cir. 1988); *Rand v. Rowland*, 154 F.3d 952, 962 (9th Cir. 1998).

## III. DISCUSSION

### A. Summary Judgment Standard

A party is entitled to summary judgment where the documentary evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The party seeking summary judgment must show that there is an absence of disputed issues of material fact and that they are entitled to judgment as a matter of law. Fed. R. Civ. Proc. 56(c). In other words, the moving party has the burden of showing that no reasonable trier of fact could find other than in their favor. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the parties' differing versions of the truth." *S.E.C. v. Seaboard Corp.*, 677 F.2d 1301, 1306 (9th Cir. 1982).

The party opposing a motion for summary judgment has a burden to provide sufficient evidence supporting their claims to establish a genuine issue of material fact for trial. *Anderson*, 477 U.S. at 252; *Chaffin*, 186 F.3d at 1213. "[A] mere 'scintilla' of evidence will be insufficient to defeat a properly supported motion for summary judgment; instead, the non[-]moving party must introduce some 'significant probative evidence tending to support [their position].'" *Fazio v. City & Cnty. of San Francisco*, 125 F.3d 1328, 1331 (9th Cir. 1997) (quoting *Anderson*, 477 U.S. at 249, 252). When a motion for summary judgment is unopposed, the Court is entitled to consider the factual allegations of the moving party as undisputed for purposes of the motion. Fed. R. Civ. P. 56(e)(2).

Because Mr. Masse is proceeding pro se, the Court construes his complaint liberally when determining the nature of his allegations. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

**B. Mootness**

As a preliminary matter, the Court notes that because Mr. Masse has been released, his claims for declaratory relief regarding DOC censorship, withholding, or restriction of his legal mail are moot. *See Preiser v. Newkirk*, 422 U.S. 395, 401-03 (1975) (finding inmate's claim for declaratory relief rendered moot by his transfer to a different facility; *see also Dilley v. Gunn*, 64 F.3d 1365, 1368 (9th Cir. 1995). This claim thus falls outside the proper exercise of judicial power under Article III of the Constitution and must be dismissed. *See Preiser*, 422 U.S. at 401. The Court thus addresses the merits of Defendants' motion only with regard to Mr. Masse's claims for damages and costs.

**C. Mr. Masse's Section 1983 Claims**

Mr. Masse alleges that Defendants' acts and omissions violated his constitutional rights in three ways: first, that Defendants' conduct violated his First Amendment rights; second, that Defendants retaliated against him for asserting his First Amendment rights; and third, that Defendants violated his Fourteenth Amendment due process rights.

**1. First Amendment Violation Claim**

Mr. Masse claims that his First Amendment rights were violated in two ways: first, by Defendants' conduct in limiting his legal mail to the

amount allowed under the indigent mail policy, and second, by Defendants' failure to address his administrative grievances to his satisfaction.[3]

**i. Constitutionality of DOC indigent mail policy**

"Prison walls do not form a barrier separating prison inmates from the protections of the Constitution." *Turner v. Safley*, 482 U.S. 78, 84 (1987). However, "a prisoner's First Amendment rights are necessarily curtailed" as a result of incarceration. *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995) (citing *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985)). To balance these competing concerns, the Supreme Corut has dictated that restrictions on a prisoner's constitutional rights should be upheld if they are "reasonably related to legitimate penological interests." *Turner*, 482 U.S. at 89.

To determine whether a correctional facility's policies are reasonably related to legitimate penological interests, courts weigh four factors:

> a) whether there is a "valid rational connection" between the regulation and a letigimate and neutral government interest, b) whether there are alternative means of exercising the asserted constitutional right that remain open to inmates, c) whether and the extent to which the accommodation of the asserted right will impact the prison staff, inmates' liberty and prison resources, [and] d) whether the regulation

---

[3] The First Amendment's guarantees of freedom and speech and the right to petition the government for redress of grievances are made applicable to the states through the due process clause of the Fourteenth Amendment. *See Gitlow v. New York*, 268 U.S. 652, 666-68 (1925) (freedom of speech); *Edwards v. South Carolina*, 372 U.S. 229, 235-37 (1963) (redress of grievances).

> represents an "exaggerated response" to prison concerns in light of the ready availability of alternatives.

*Johnson v. Moore*, 926 F.2d 921, 924 (9th Cir. 1991) (citing *Turner*, 482 U.S. at 89-90).

Washington's indigent mail policy was created to further the legislative goals of Washington's corrections system, which include "sharing in the. . . personal and fiscal obligation[s] in the corrections system" and "provid[ing] for prudent management of resources." RCW 72.09.010(5)(e) & (6). Washington Administrative Code 137-48-060(3) provides that an inmate may receive postage for up to ten mail items each week if the inmate is deemed indigent, that is, if the inmate has less than ten dollars of disposable income for thirty days preceding the day a mail request is made. WAC 137-48-020 & 060(3). To implement WAC 137-48, the DOC adopted DOC Policy 450.100, which provides in pertinent part:

> [i]ndigent offenders may receive postage credit up to the equivalent of 10 first class pre-franked envelopes per week for mailing costs, including legal mail, if they have outgoing mail. This allowance can not accumulate from week to week.

Wash. DOC Policy 450.100.

Analysis of the four *Turner* factors demonstrates that the DOC's indigent postage policy is reasonably related to legitimate penological interests. First, there is a valid, rational connection between the mail policy and the state's legitimate interest in regulating inmate mail, discouraging abuse of the mail system by prisoners, and keeping institutional costs within allowed budgets. Second, inmates have alternative means of exercising their First Amendment rights because the policy does not impose a blanket limit on inmates' ability to use the mail system; inmates may always send additional mail using their own

funds. Furthermore, the policy allows for exceptions when inmates are engaged in civil rights challenges or where the inmate authorizes a disbursement of funds already in the inmate's account. There is no evidence that Mr. Masse requested additional postage or was denied the opportunity to do so. Third, accommodation of an indigent inmate's demand for unlimited DOC-funded mail would potentially place an undue burden on prison staff, drain prison resources, and have a negative secondary effect on other inmates' ability to send mail. Finally, the indigent inmate policy does not appear to be an "exaggerated response" to prison concerns, but rather a reasonable accommodation of indigent inmates' right to access the U.S. mail.

In light of these four considerations, the Court finds the indigent mail policy to be reasonably related to legitimate penological interests. This is consistent with the decisions of other courts that have considered First Amendment challenges to DOC Policy 450.100. *See, e.g.*, *Snelling v. Riveland*, 983 F. Supp. 930, 936-37 (E.D. Wash. 1997) (rejecting challenge to DOC Policy 450.100's prohibition on delivery of sexually-explicit mail to prisoners). Because the Court finds DOC Policy 450.100 to be constitutional, Defendants are not liable under § 1983 for actions they took according to the policy. Accordingly, Defendants' motion is granted with regard to Mr. Masse's assertion that Defendants violated his First Amendment rights by acting in accord with the indigent mail policy.

**ii. Administrative grievances**

Mr. Masse also claims that Defendants' failure to address his administrative grievances to his satisfaction violated his First

Amendment right to petition the government for redress of grievances. Although inmates have a constitutionally-protected right to seek redress of their grievances, inmates have "no legitimate claim of entitlement to a grievance procedure." *Mann v. Adams*, 855 F.2d 639 (9th Cir. 1988) (citing *Shango v. Jurich*, 681 F.2d 1091, 1100 (7th Cir. 1982)); *see also Maya v. Weed*, No. CV-1-08-1230-JMR, 2009 WL 926972 at *2 (E.D. Cal. April 3, 2009) ("There is no free-standing constitutional right to a grievance process because inmates do not have a protected liberty interest in jail or prison grievance procedures."). Accordingly, inasmuch as Mr. Masse's complaint alleges that his First Amendment rights were violated by the manner in which Defendants handled his grievances, Defendants' motion is granted and that claim is dismissed.

**2. Retaliation Claim**

To state a § 1983 claim based on retaliation for exercising his First Amendment rights, Mr. Masse must show "that he was retaliated against for exercising his constitutional rights and that the retaliatory action does not advance legitimate penological goals, such as preserving institutional order and discipline." *Barnett v. Centoni*, 31 F.3d 813, 815-16 (9th Cir. 1994) (citing *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985)). The Ninth Circuit has instructed district courts to "'afford appropriate deference and flexibility' to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory." *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995) (quoting *Sandin v. Conner*, 515 U.S. 472, 482 (1995)).

Here, it is undisputed that Mr. Masse was exercising constitutional rights when he attempted to send outgoing mail and when he filed

administrative grievances at AHCC. The question is thus whether the allegedly-retaliatory conduct advances legitimate penological goals. Mr. Masse alleges four instances of allegedly-retaliatory conduct: 1) refusing to send mail in excess of the allowed postage allotment; 2) transferring him to a minimum-security facility that did not have a law library; 3) removing four typewriter ribbons from his cell; and 4) throwing returned legal mail at him.

**i. Indigent mail policy**

As noted above, the indigent mail policy memorialized in DOC Policy 450.100 is reasonably related to legitimate penological interests. *See* Section III.C.1.i, *supra*. Defendants assert, and the Court takes as true for purposes of this unopposed motion, that the limitations expressed in the policy are mandatory and are applied equally to all inmates. Thus, because the allegedly-retaliatory conduct promotes legitimate penological goals, the Court grants Defendants' motion with regard to this claim.

**ii. Transfer to minimum-security facility**

Mr. Masse asserts that his transfer to a minimum-security facility without a law library was retaliatory. Mr. Masse has presented no evidence that tends to show retaliation beyond the bare fact that he was transferred. On the other hand, Defendants have presented credible evidence that Mr. Masse was transferred to OCC upon his own request, and that decisions regarding transfers are made at DOC headquarters and not by individual officials. *See* Watkins Decl., ECF No. 26 at ¶¶ 14-17; Becerra Decl., ECF No. 25 at ¶¶ 3-7. The Court thus finds that the allegedly-retaliatory action promoted legitimate penological goals, and

indeed, was taken at Mr. Masse's behest, and accordingly grants Defendants' motion with regard to this claim.

**iii. Removal of typewriter ribbons from Mr. Masse's cell**

Mr. Masse alleges that Defendants Jenkins and Starr removed four typewriter ribbons from his cell in retaliation for his filing of an administrative grievance against Defendant Jenkins. Defendants assert, and the Court takes as true for purposes of this unopposed motion, that this simply did not occur. *See* Jenkins Decl., ECF No. 23 ¶¶ 29-31; Starr Decl., ECF No. 27 ¶¶ 4-6. Accordingly, the Court finds that Defendants Jenkins and Starr did not engage in the allegedly-retaliatory conduct, and grants Defendants' motion with regard to this claim.

**iv. Return of Mr. Masse's mail**

Mr. Masse also alleges that Defendant Becerra cast a stack of legal mail towards his groin in retaliation for his attempts to send excess mail in violation of the indigent mail policy. Mr. Masse has submitted no evidence in support of this claim beyond his complaint's bare assertion of the offending volley, and the Court thus grants Defendants' motion with regard to this claim. *See Anderson*, 477 U.S. at 256 (holding that plaintiffs cannot defeat a properly supported summary judgment motion "without offering any significant probative evidence tending to support the complaint." (internal quotation omitted)).

**3. Fourteenth Amendment Due Process Claim**

Mr. Masse claims that Defendants' enforcement of the indigent postage policy violated his due process rights. Mr. Masse claims that his mail was censored, withheld, or restricted without providing him written notice or an opportunity for appeal. Mr. Masse further claims

that Defendants Becerra and Watkins "summarily disposed of" numerous pieces of his outgoing legal mail. ECF No. 4 ¶ 24. As Defendants note, however, Mr. Masse repeatedly filed administrative grievances when his submissions in excess of the indigent mail allowance were rejected, and each grievance was addressed and responded to in a timely manner, giving Mr. Masse notice and an opportunity to be heard. With regard to Mr. Masse's allegation that Defendants Becerra and Watkins discarded or destroyed his outgoing legal mail, Mr. Masse has not supported this allegation with sufficient evidence to withstand summary judgment. *See Anderson*, 477 U.S. at 256. Because Defendants have demonstrated that they are entitled to judgment as a matter of law on Mr. Masse's due process claim, the Court grants Defendants' motion with regard to this claim.

**D. Qualified Immunity**

Defendants argue in their motion that Mr. Masse's claims should be dismissed because the named defendants in this case are all individuals who are subject to qualified immunity. Because the Court grants Defendants' motion on the merits of Mr. Masse's claim, it does not reach Defendants' qualified immunity argument.

## IV. CONCLUSION

Mr. Masse's claims for declaratory relief must be dismissed because they were rendered moot by his release and the Court is without jurisdiction to hear them. With regard to Mr. Masse's claims for damages and costs under § 1983 and the due process clause of the Fourteenth Amendment, the Court grants Defendants' motion.

For the foregoing reasons, **IT IS HEREBY ORDERED:**

1. Plaintiff's claims for declaratory relief are **DISMISSED** as moot.

2. Defendant's Motion for Summary Judgment, **ECF No. 20**, is **GRANTED.**

3. Judgment shall be **ENTERED** with prejudice in Defendants' favor.

4. All further dates and deadlines are **STRICKEN.**

5. This file shall be **CLOSED.**

**IT IS SO ORDERED.** The District Court Executive is directed to file this Order and provide copies of this Order to Mr. Masse and counsel.

**DATED** this 11th day of October 2011.

S/ Edward F. Shea
EDWARD F. SHEA
United States District Judge

Q:\Civil\2010\65.SJ.lc2.wpd